```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
_____

Assassination Archives and      ) Civil Action
Research Center,                ) No. 1:18-cv-01868-TNM
                                )
              Plaintiff,        )
                                ) Status Conference
vs.                             )
                                )
Department of Justice,          ) Washington, D.C.
                                ) August 6, 2019
              Defendant.        ) Time:  10:30 a.m.
_____

                 Transcript of Status Conference
                          Held Before
                The Honorable Trevor N. McFadden
                   United States District Judge
_____

                       A P P E A R A N C E S

For the Plaintiff:         Kelly B. McClanahan (via telephone)
                           NATIONAL SECURITY COUNSELORS
                           4702 Levada Terrace
                           Rockville, Maryland 20853

For the Defendant:         Rhonda L. Campbell (via telephone)
                           U.S. ATTORNEY'S OFFICE FOR THE
                           DISTRICT OF COLUMBIA
                           555 Fourth Street, Northwest
                           Washington, D.C. 20530
_____

Court Reporter:            Nancy J. Meyer
                           Official Court Reporter
                           Registered Merit Reporter
                           Certified Realtime Reporter
                           United States Courthouse, Room 6509
                           333 Constitution Avenue, Northwest
                           Washington, D.C. 20001
                           (202) 354-3118
```

```
 1                     P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Your Honor, this is Civil Case
 3    18-1868, Assassination Archives and Research Center vs.
 4    Department of Justice.  Counsel, please identify yourselves for
 5    the record.
 6              MR. McCLANAHAN:  This is Kel McClanahan.
 7              MS. CAMPBELL:  Good morning --
 8              THE COURT:  Good morning, Mr. McClanahan.
 9              MS. CAMPBELL:  Good morning.  Rhonda Campbell for the
10    United States of America.
11              THE COURT:  Good morning, Ms. Campbell.
12              All right.  I understand Ms. Campbell's child is
13    sick.  Mr. McClanahan, why aren't you here in court?
14              MR. McCLANAHAN:  Because she told me that she was
15    telling y'all that we needed to reschedule, and so I did not
16    travel to D.C.  I informed Mr. Adams of this about 20 minutes
17    ago when I got the email.
18              THE COURT:  All right.  Mr. McClanahan, my status
19    conferences are not voluntary attendance issues.  I understand
20    Ms. Campbell had an emergency, but unless and until you hear
21    from my chambers that we're rescheduling or that you're
22    permitted to call in by phone, you should be here and not just
23    make your own arrangements.  That's certainly not how things
24    work and -- in my courtroom, and, you know, I think you and I
25    may have discussed this before, sir, but if you choose to file
```

1  cases in D.C., you need to be available to be in my courtroom.
2  And if you're not available to be in my courtroom, your cases
3  will not be heard here.  Do you understand that?
4           MR. McCLANAHAN:  I do.  You and I have not ever
5  discussed anything like this.  I do apologize.  I thought that
6  it would be rescheduled because of her medical issue, and so I
7  acted on that.
8           THE COURT:  Okay.  It's not being rescheduled.  I
9  want to move forward with whatever that we can.
10          Ms. Campbell, how long do you expect the productions
11 to continue at this rate?
12          MS. CAMPBELL:  I -- I am -- I do want to state that
13 I'm not looking at a computer at this moment, and I do
14 apologize for any confusion that I've caused this morning.  I
15 do not know the exact date, but agency counsel indicated to me
16 in emails that this is going to take years.
17          THE COURT:  Okay.  But you don't have a sense of
18 whether years means a few years or a decade or what?
19          MS. CAMPBELL:  I -- I get the impression that it
20 is -- it is close to a decade.  That's how long she -- she
21 continues to send me -- and when I say "she," I'm talking about
22 agency counsel -- continues to tell me that this is a very long
23 production schedule and it's going to be -- it should have been
24 an *Open America*, in her mind, because it's going to be so long.
25          THE COURT:  Okay.  So I think on -- on that point and

1   on, you know, the question about whether there, in fact, should
2   be an *Open America* stay, you know, I'll tell you my inclination
3   is as long as there is ongoing production, an *Open America* stay
4   is -- is not necessary.  I think, you know, 500 pages a month
5   is -- is really on the top end of what I would order in a
6   monthly production, in any event, but I -- I do think it's
7   worth all of us having a conversation about how long this is
8   going to take and what -- how we're -- how we're going to get
9   this across the finish line.  So I want to come back to that.
10              The other issue that Mr. McClanahan raises is the
11  question about fees for a nonpublic interest waiver.  I'm -- I
12  have not faced this issue before.  Mr. McClanahan, do you
13  typically represent AARC?
14              MR. McCLANAHAN:  Do I -- oh, AARC?
15              THE COURT:  Yes.
16              MR. McCLANAHAN:  I do represent them in a couple
17  matters, but this is the first court case that I've represented
18  them in.
19              THE COURT:  Okay.  All right.  So you don't -- you
20  don't have much of a sense of how this has worked in other
21  cases with AARC?
22              MR. McCLANAHAN:  You mean whether or not they got a
23  waiver?
24              THE COURT:  Correct.
25              MR. McCLANAHAN:  I -- I believe that they normally

1   get a waiver, but I want to clarify one thing.  This -- there
2   are two different issues here.  One is the public interest fee
3   waiver, but the other is just the generic -- the agency has to
4   prove that it's charging reasonable fees.  And that's -- that's
5   a legally distinct issue, and we're -- we're arguing
6   that not -- even if we did not get a public fee waiver, they
7   have not justified the fees that they're charging because
8   they're not allowed to charge it because they took too long to
9   produce the records.
10              THE COURT:  Okay.  So, Ms. Campbell, it seems to me
11  that I need to resolve this issue.  Do you disagree?
12              MS. CAMPBELL:  I don't disagree, Your Honor.  Our
13  only contention when we were discussing this, as I recall, is
14  who would actually initiate briefing.  And considering that
15  this has been administratively processed, this issue, that it
16  was our position -- the FBI's position that Mr. McClanahan or
17  the plaintiff should start because he has the issue with the
18  fee waiver or whether there should be a fee waiver.  So that
19  was our real contention, and that's why it's before the Court
20  is really about who should be initiating briefing, and it's our
21  position -- or the FBI's position -- that, in fact, the
22  plaintiffs should go first.
23              THE COURT:  Okay.  And, Mr. McClanahan, do you want
24  to be heard on that?
25              MR. McCLANAHAN:  Yes, please.  That -- there are two

1    main issues with the FBI's position.  Number one is that it
2    ignores the fact there are two legal issues and not just the
3    fee waiver.  Number two is regardless of their position that we
4    should go first, Your Honor has done enough FOIA cases, the
5    plaintiff never goes first in summary judgment in FOIA cases,
6    and it just flips the system on its head to try to make us file
7    a brief based on just the skimpy information that was in the
8    administrative record; when the way it normally works is that
9    they file a declaration from David Hardy or Michael Seidel or
10   somebody who justifies everything they did and how they made
11   the fee waiver determination, how they made the fee
12   determination, and then we oppose that or we cross-move for
13   summary judgment on that, but they have to go first.
14           MS. CAMPBELL:  No.
15           THE COURT:  Okay.  So I understand your perspective,
16   and I think that's probably right as a matter of, you know, in
17   general FOIA summary judgment issues.  I think as I see it
18   here, I mean, you -- call it what you will, but this is -- this
19   is not so much a summary judgment issue as just how are we
20   going to be able to proceed.  And you're asking for documents.
21   They say we'll give you the documents but you've got to pay.
22   You say I don't want to pay.
23           I think -- I'd like the plaintiffs to file -- you can
24   call it partial motion for summary judgment, if you'd like.
25   You can call it whatever you want, but I think I'll direct the

1   plaintiffs to file first and on both issues.  I -- my
2   impression was just the question was whether or not you needed
3   to pay fees at all, although I understand your point,
4   Mr. McClanahan, that even if you're -- you're required to pay
5   fees, there's still kind of a reasonableness issue.  And so
6   I'll ask you to file something on that, and the government can
7   oppose and -- and submit a declaration, and then obviously
8   you'd have an opportunity to reply to that, but I think that's
9   the way I'd like to do it.
10          Mr. McClanahan, how long do you need to file
11  something?
12          MR. McCLANAHAN:  Can I say one thing before we get to
13  scheduling?
14          THE COURT:  Sure.
15          MR. McCLANAHAN:  So there is an easy way to avoid
16  this entire thing, and that is, we've committed that if we are
17  denied the fee waiver and the Court decides that we have to pay
18  fees, that we'll pay the fees.  The only issue right now is
19  whether we have to pay them now as opposed to after the Court
20  resolves it.  And if we can all just agree that at the end
21  of -- and I did the math.  This is not going to take a decade.
22  They have 20,000 pages according to the status reports.  Five
23  hundred pages a month, that's 3.3 years.  So in three years and
24  change, we'll be briefing whether or not the fees are owed.  If
25  you find that fees are owed, pay them then.  They're not going

1   to be that hard up to not have $500 for the next three years.
2           THE COURT:  Ms. Campbell, are you comfortable with
3   that?
4           MS. CAMPBELL:  I am not, Your Honor.  The FBI has a
5   process for how they produce and release information, and
6   there's no way that I can authorize plaintiff's counsel to just
7   arbitrarily decide this is not the procedure.  They have to pay
8   every month in order for FBI to produce.  That has been going
9   on for years, as long as I've been doing FOIA cases.  So I'm
10  objecting to that.
11          THE COURT:  Okay.  So, Mr. McClanahan, I mean, it's
12  not an unreasonable suggestion, but I certainly don't think I
13  can just order the government to proceed on that basis with --
14  without any briefing anyway.  So I think we're back in the same
15  point; that if you want documents and you don't want to pay --
16  or at least don't want to pay now, you need to file something
17  that explains your position.  So how long do you need, sir?
18          MR. McCLANAHAN:  I'm looking at my calendar now.  If
19  I'm going to have to try and guess what their arguments are
20  going to be because they have not filed a declaration, it's
21  going to take longer.  So let's say -- I've got court then.
22  I've got oral arguments then.  How about September 13th?
23          THE COURT:  All right.  That feels on the long end,
24  but I'm willing to go with that.
25          Ms. Campbell, how long will you need to oppose?

| | |
|---|---|
| 1 | MS. CAMPBELL:  Can I have three weeks, Your Honor? |
| 2 | THE COURT:  Yes.  All right.  So -- |
| 3 | MS. CAMPBELL:  Thank you. |
| 4 | THE COURT:  -- the plaintiff's motion is due by |
| 5 | September 13th.  The government's opposition is due |
| 6 | October 4th, and, Mr. McClanahan, I'll give you two weeks to |
| 7 | respond.  So -- |
| 8 | MR. McCLANAHAN:  Can it be three, because I have a |
| 9 | really major deadline that week of the 18th that would |
| 10 | really just jump all over this. |
| 11 | THE COURT:  So the 25th? |
| 12 | MR. McCLANAHAN:  Yeah. |
| 13 | THE COURT:  Okay.  So your reply will be due |
| 14 | October 25th.  And then what I'd like to do is set a motions |
| 15 | hearing where I'd anticipate ruling on that, but also I'd like |
| 16 | the parties to come in and -- I think, Ms. Campbell, this will |
| 17 | largely be on you -- prepared to give me a bit more information |
| 18 | about, you know -- hopefully Mr. McClanahan is right and we're |
| 19 | looking at, you know, three or so years, but I'd like to get a |
| 20 | better estimate from you at that point of how long this is |
| 21 | going to take on your proposed schedule. |
| 22 | MS. CAMPBELL:  I will do that, Your Honor, and I can |
| 23 | do that in briefing as well. |
| 24 | THE COURT:  Okay.  That's fine.  And so I take it -- |
| 25 | I mean, we're not going to have any productions until then; am |

1   I correct about that?
2           MS. CAMPBELL: We're not going to have any what? I'm
3   sorry. I didn't hear that.
4           THE COURT: There's not any productions going on now;
5   is that right?
6           MS. CAMPBELL: No, we are producing. I think we are.
7   I'm sorry. I'm not -- I'm not looking at my computer. I think
8   we're reviewing, but I don't remember what I've said in my
9   JSRs, Your Honor.
10          THE COURT: Okay. I'm looking at that now.
11          MR. McCLANAHAN: We get about 500 pages a month --
12          THE COURT: Okay.
13          MR. McCLANAHAN: -- more or less.
14          THE COURT: So you all --
15          MS. CAMPBELL: Thank you.
16          THE COURT: -- are continuing with the productions,
17  but you're saying you'd like to get paid for them. I take
18  it -- so is the FBI just planning to turn off the spigot until
19  then?
20          MS. CAMPBELL: Well, no. What they do is they --
21  they give out a warning. It's just like any other billing. So
22  you haven't paid, then they'll stop production. So I -- I did
23  communicate with Mr. McClanahan when the FBI informed me that
24  they haven't been paid. If it's already been produced --
25  they've already put it in gear, they generally send it out, but

1     if it has not been put together, they will cease, and the next
2     month they won't do anything until they get the fee.
3                 It's a whole -- whole system that has absolutely
4     nothing to do with agency counsel.  It's how they handle it
5     in -- in the various sections of the FBI.  So one component
6     talks to the other, and if they haven't gotten the fee, then
7     they stop producing.  At this juncture they are producing
8     because apparently he's -- the plaintiff is paying.
9                 THE COURT:  Okay.  So how about motions hearing for
10    Wednesday, November 6th at 10:00 a.m.?  That work for you,
11    Mr. McClanahan?
12                MR. McCLANAHAN:  Yeah, that works.  Is it possible to
13    do it a little bit later because the commute in is rough for
14    me.
15                THE COURT:  No.  I set my status conferences at
16    10:00 a.m.
17                MR. McCLANAHAN:  Oh, okay.
18                THE COURT:  That day doesn't work for you, I'm happy
19    to look for a different day, but they're at 10:00 a.m.
20                MR. McCLANAHAN:  No, that's --
21                THE COURT:  Okay.  And Ms. Campbell?
22                MS. CAMPBELL:  November 6th, did you say, Your Honor?
23                THE COURT:  Yes.
24                MS. CAMPBELL:  Yes, I don't have anything on that
25    day.

1           Your Honor, I have one more issue I'd like to
2    address, if we can.
3           THE COURT:  Okay.
4           MS. CAMPBELL:  It was -- I don't -- I think we've
5    said it in a couple of JSRs that it's sort of a lot to have a
6    production -- knowing that this is going to be a lengthy
7    production -- to have to produce a JSR to the Court every
8    month.  If -- if the Court is amenable, we'd like to reduce the
9    JSRs to every six months to let the Court know how much we've
10   produced -- of how much we've reviewed, how much we're
11   producing, and give the status of the case.
12          THE COURT:  Okay.  So I'm going to lift the
13   requirement for JSRs between now and November 6th.  I think,
14   you know, in light of the fee dispute, it doesn't really make
15   sense for me to order production.  And we can -- we can take
16   that up then, Ms. Campbell, about how frequently they should
17   be -- JSRs should be served.  I agree with you that monthly
18   it's probably unnecessary.  I don't know.  Six months may be a
19   little long, but I'm happy to discuss that then once we've got
20   a better sense of the total scope here and also what the
21   production rate should be going forward.
22          Okay.  Anything further from plaintiff,
23   Mr. McClanahan?
24          MR. McCLANAHAN:  Yes, sir.  A related issue.  We
25   still think that, respectfully, we should have a chance to

1    brief the 500-page-per-month rate, and so if you're not going
2    to make them file an *Open America* stay, how do you want that to
3    go procedurally?
4              THE COURT:  You're welcome to have that be -- just
5    add that into the current briefing.  I'm certainly willing to
6    consider -- or reconsider that issue if you want to wrap that
7    into the briefing.
8              MR. McCLANAHAN:  Okay.  Shall I assume that you won't
9    be trying to file it as, like, a motion to reconsider that
10   makes that burden?  We're just filing a motion to expedite
11   production or something?
12             THE COURT:  Yeah, I'm not -- you know, sitting here I
13   don't have a strong view on what -- what you'd call that.
14   Again, you know, I'm just telling you my instinct, this is not
15   an *Open America* stay situation unless -- given that there is an
16   ongoing production, but, you know, I don't think -- I wouldn't
17   think you need to meet some sort of heightened motion for
18   reconsideration burden, Mr. McClanahan.
19             I think if you want to -- as I kind of see this, this
20   is, you know, a motion for partial summary judgment on the
21   fee -- the fee issue, and if -- if you want to include briefing
22   on an appropriate schedule, you know, Ms. -- Ms. Campbell can
23   certainly in her opposition explain what -- what standard of
24   review she'd think that would -- would apply there, but I think
25   this is just -- in my mind, it is -- it's just kind of the --

1    in these FOIA cases, the courts are routinely setting
2    production schedules based on various factors, not so much kind
3    of a clear legal standard, as more just trying to supervise the
4    docket and -- and the -- the needs for certain production
5    amount change over time.  So I don't think it's a motion for
6    reconsideration situation.
7              MR. McCLANAHAN:  With that in mind, sort of
8    perfecting the -- the record, should any of this go on appeal
9    or reconsideration or something, I would like to make an oral
10   motion to have the -- compel them to file an *Open America* stay
11   that you can then formally deny so that that's on the record so
12   it preserves the issue should it come up later.
13             THE COURT:  That's just fine.  I'll -- your motion
14   is -- is heard and granted for the record -- or I'm sorry --
15   heard and denied for the record, but you can certainly make
16   that motion.
17             MR. McCLANAHAN:  All right.  Thanks very much, Your
18   Honor.
19             THE COURT:  Ms. Campbell, anything further?
20             MS. CAMPBELL:  No, Your Honor.  Thank you.  And,
21   again, I apologize to everyone for this morning.
22             THE COURT:  I hope your child feels better.  Take
23   care, folks.
24             THE COURTROOM DEPUTY:  This Honorable Court is
25   adjourned.

```
 1                  (The proceedings were concluded.)
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3           I, Nancy J. Meyer, Registered Professional Reporter,

 4      Certified Realtime Reporter, do hereby certify that the above

 5      and foregoing constitutes a true and accurate transcript of my

 6      stenograph notes and is a full, true, and complete transcript

 7      of the proceedings to the best of my ability.

 8

 9                         Dated this 7th day of August, 2019.

10

11                         /s/ Nancy J. Meyer
                           Nancy J. Meyer
12                         Official Court Reporter
                           Registered Professional Reporter
13                         Certified Realtime Reporter
                           333 Constitution Avenue Northwest, Room 6509
14                         Washington, D.C. 20001
```