UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASSASSINATION ARCHIVES AND *
RESEARCH CENTER, INC., *
 *
    Plaintiff, *
 *
v. * Civil Action No. 1:18-cv-01868 (TNM)
 *
DEPARTMENT OF JUSTICE, *
 *
    Defendant. *
 *
\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MOTION TO COMPEL
DEFENDANT TO SEEK AN *OPEN AMERICA* STAY**

Plaintiff Assassination Archives and Research Center, Inc. ("AARC") commenced this litigation against Defendant Federal Bureau of Investigation ("FBI")[1] in 2018 in part to obtain copies of historical indices of electronic surveillance activities—the majority of which are over sixty years old—that AARC had requested in 2012. (Compl., Dkt. #1, ¶¶ 17-19 (filed Aug. 8, 2018).) After AARC commenced this litigation, FBI began processing responsive records and began releasing records at a rate of approximately 500 pages/month, which it released by mailing a CD containing responsive records to AARC each month. (J. Stat. Rep., Def.'s Mot. Modify Sched. for Stat. Reps., & Pl.'s Mot. Set Briefing Sched., Dkt. #17, at 3 (filed June 5, 2019).) As of 31 July 2021, FBI claimed that approximately 22,500 pages remained to be processed (J. Stat. Rep., Dkt. #37, at 3 (filed July 31, 2021)), which means that, if FBI continues at its current rate of production, FBI will complete its processing of responsive records in approximately forty-one

---

[1] FBI is treated herein as the "Defendant" to avoid confusion because the case is limited to questions about FBI's processing of AARC's Freedom of Information Act ("FOIA") request, even though the Department of Justice is the proper party Defendant as a matter of law.

months—in April 2025. In the parties' 5 June 2019 Joint Status Report, and again in the 6 August 2019 Status Conference, AARC asserted that if FBI intended to continue to process records at the current pace and delay the resolution of this case for six more years, the Court must require it to satisfy the strict requirements established by the D.C. Circuit in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). (J. Stat. Rep., Dkt. #17, at 3-4 (filed June 5, 2019).) The Court then directed AARC to file a motion to compel FBI to seek an *Open America* stay.

Due to various intervening factors, including the coronavirus pandemic, AARC opted to delay the filing of this Motion indefinitely. (Pl.'s Not. to Court, Dkt. #24, at 2 (filed Mar. 31, 2020).) However, due to the coronavirus pandemic lasting significantly longer than AARC anticipated, AARC is now formally seeking the relief it originally requested in June 2019. As explained in the following memorandum, which has been included in this Motion due to its short length, the Court should grant AARC's Motion.

Defendant opposes this Motion. A proposed Order is attached to this Motion.

**Memorandum of Points and Authorities**

In cases where an agency seeks to postpone briefing by a significant period, it is well-established that the agency must seek an *Open America* stay justifying the delay (and, accordingly, justifying the processing speed causing the delay). In such a motion, an agency must show "exceptional circumstances" to meet the "substantial burden [placed] on the government to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring). An *Open America* stay may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; *and*

(3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests." *Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111, 120 (D.D.C. 2007) (emphasis in original) (quoting *Wilderness Soc'y v. DOJ*, No. 04-650, 2005 U.S. Dist. LEXIS 20042, at *31-32 (D.D.C. Sept. 12, 2005)).

Over the course of this litigation—and in other cases in which the undersigned has been involved—the Government has taken the unusual position that an *Open America* stay is not required when the agency in question is processing records, and that it is only necessary when the agency seeks to delay its *commencement* of the process. In other words, according to the Government, if FBI seeks to wait until June 2022 to begin processing records, which it will complete processing in September 2022, it must meet the strict requirements for an *Open America* stay, but if it seeks to slowly process records until April 2025, it may simply cite its "policy" and rely on the Court's inherent authority to enter scheduling orders as an exercise of discretion. There is no defensible reason for such a dichotomy, and such an extreme delay in the resolution of a FOIA case is beyond the scope of the Court's inherent authority to manage its docket and is the *raison d'être* for the *Open America* line of jurisprudence. It is well-established that an agency has complied with FOIA when it *completes* its processing of responsive records, not when it *begins* it. If the purpose of the heightened burden for an *Open America* stay is "to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring), then it must apply to "*any* noncompliance with FOIA time limits," *id.* (emphasis added), regardless of whether the noncompliance is due to a delay in the commencement or the completion of the process.

*Open America* itself dealt with a district court which directed the agency to immediately process the plaintiff's request. That order was reversed and the stay was granted after "exceptional circumstances" were found, but the *Open America* stay was created as, and remains, an exception to the default rule that agencies must comply with all of FOIA, including the statutorily imposed deadlines. An agency's "good faith and due diligence" remain the "touchstones underlying FOIA's statutory scheme." *Judicial Watch, Inc. v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) (quoting *Open Am.*, 547 F.2d at 616). A district court is obligated to determine that an agency "has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA." *Id*. at 784. When an agency has not yet processed all records, it has not "responded" to the entire request, because it may still decide to assert exemptions for as-yet-unprocessed records. The point of an *Open America* stay is to allow more time to respond to the request in its entirety, not just part of it. Otherwise, an agency could simply produce one responsive document up front and then delay the release of other records for years.

Once in court, an agency "may further extend its response time [to a request] *if it demonstrates 'exceptional circumstances' to the court.*" *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) (emphasis added). The language of *Open America* jurisprudence broadly makes clear that agencies must either promptly comply with FOIA's requirements or *actively* seek a stay for "exceptional circumstances" to allow more response and/or processing time, which may only be granted as long as the agency is "exercising due diligence in responding to the request." 5 U.S.C. 552 § (a)(6)(C)(i). "Exceptional circumstances" specifically *excludes* "a delay that results from a predictable agency workload of requests . . .

4

unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552((a)(6)(C)(ii). This change was specifically made in 1996 to narrow the circumstances under which agencies could rely on *Open America* stays—and such a change is hardly consistent with the notion that an agency does not have to actively justify its delay in response or processing if it is doing anything more than not responding *at all*.

Possible reasons for such a stay include that the agency is "deluged" with requests "vastly in excess of that anticipated by Congress," *Open Am.* at 616, or that the agency is making efforts to, *e.g.*, reduce the number of pending requests or the size or complexity of other requests. *See, e.g.*, *Elec. Privacy Info Ctr. v. FBI*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013). But the agency has to affirmatively meet this burden in order to be given more time. *See, e.g., Clemente v. FBI*, 71 F. Supp. 3d 262, 266 (D.D.C. 2014) ("The FBI must make two showings before the court may grant a stay of proceedings: (1) that exceptional circumstances exist, and (2) that the agency is 'exercising due diligence' in processing [the] request."). All of these cases take for granted that an *Open America* stay is a conditional grant of more time contingent on the agency's affirmative showings. Otherwise, the plaintiff may be entitled to a judgment on the pleadings. *See, e.g.*, *Nat'l Sec. Archive v. SEC*, 770 F. Supp. 2d 6, 8-9 (D.D.C. 2011) (finding that plaintiff's allegation that defendants violated FOIA by failing to disclose responsive records within the statutory period was countered by the SEC's affirmative detailing of its exceptional circumstances and due diligence warranting an *Open America* stay).

A further, practical reason the burden is on the agency to move for and demonstrate eligibility for an *Open America* stay is that the plaintiff is in no position to know of, let alone demonstrate to the Court, whether the agency is actually exercising due diligence or is truly facing exceptional circumstances. For both judicial economy and basic fairness purposes, it is

only logical that the agency must either produce the requested records quickly or explain why it cannot. This is effectively the same logic behind *Vaughn* indices, as *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), found that the Government could not simply assert broad and conclusive exemptions, but instead had to defend the asserted exemptions in more detail because it was the only party that could do so absent a special master. Indeed, the *Vaughn* court noted that "[t]he procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate." *Id.* at 828. In FOIA litigation, many burdens are on the Government for a reason. Here, it is consistent with the entire FOIA framework to require that an agency either actively justify its delays or be vulnerable to judgment on the pleadings.

For the foregoing reasons, AARC respectfully requests that the Court grant its Motion. If FBI is unwilling to meet the burden of requesting an *Open America* stay, the Court should presume that it cannot justify its implicit request for a 41-month stay of briefing and order FBI to process all responsive records within twelve months. In order to meet this requirement, FBI would need to process approximately 1700 pages/month, which is significantly less than the 2850 pages it has been ordered to process in *Seavey v. DOJ*, which Judge Kessler described as "well within the range of what other courts have ordered," 266 F. Supp. 3d 241, 248 (D.D.C. 2017), after observing that "FBI has acknowledged that it has established a policy goal that 'no requestor should have to wait more than three years before the FBI provides a complete response' to a request." *Id.* Even allowing for the fact that FBI claims not to have received the 2012 request, FBI admits that it received notice of it in 2013 (Def.'s Ans. Pl.'s Compl., Dkt. #8-1, ¶ 22 (filed Oct. 4, 2018)) and that it did not begin processing records until AARC filed this

case in 2018, which means that FBI has failed to complete its processing of this request for between three and eight years, and yet it maintains that it should not have to justify a further delay of over three *more* years simply because it has a "standard processing rate."

On the contrary, a survey of cases from this Circuit reveals that it is not in fact unusual for FBI to be required to process several thousand pages per month in cases involving a large volume of records. For example, in *Lardner v. FBI*, FBI processed approximately 5000 pages per month. J. Stat. Rep., Dkt. #111, at 1 n.1 (filed Aug. 1, 2012), No. 03-874 (D.D.C.). In *Electronic Privacy Information Center ("EPIC") v. FBI,* FBI complained that it was facing such exceptional circumstances that it could only review 1500 pages per month. 933 F. Supp. 2d at 48. Judge Kollar-Kotelly, relying on *Lardner*, nevertheless ordered FBI to process 25,000 potentially responsive pages in 5 months, finding "the fact that the FBI indicated on August 1, 2012, that it anticipated being able to process approximately 5,000 pages per month in another case demonstrates that the FBI is not facing such exceptional circumstances that it can only review 1,500 pages per month in response to EPIC's request."). *Id.* Again in *Clemente*, Judge Hogan ordered FBI to process 5000 pages per month after denying FBI's request for a stay. 71 F. Supp. 3d at 269. In *ACLU v. FBI*, FBI was ordered to process responsive records at the relatively sedate rate of 2500 pages per month. J. Stip. Re. Doc. Prod. Sched., Dkt. #55, at 1 (filed Apr. 13, 2011), *ACLU v. FBI*, No. 10-3759 (N.D. Cal.). Notably, all of these cases significantly post-dated FBI's 500 pages/month policy, which was implemented in 2010. These cases are but examples of court-ordered deviations from FBI's "standard processing rate," and they are provided here simply to illustrate that the Court need not assign any particular weight to FBI's claims that it

does not need to meet any particular burden beyond citing to its policy; these cases in fact show why heightened standards are required, and why FBI is so desperate to avoid them.[2]

Date:   November 23, 2021

                         Respectfully submitted,

                         /s/ Kelly B. McClanahan
                         Kelly B. McClanahan, Esq.
                         D.C. Bar #984704
                         National Security Counselors
                         4702 Levada Terrace
                         Rockville, MD  20853
                         301-728-5908
                         240-681-2189 fax
                         Kel@NationalSecurityLaw.org

                         *Counsel for Plaintiff*

---

[2] Because the purpose of this Motion is simply to compel FBI to seek an *Open America* stay, AARC will not spend any more time attacking the processing rate in this context; that would defeat the purpose of the Motion. The fact that AARC can provide these examples—as well as many more—should be reason enough to require FBI to request a stay, and AARC is prepared in such a circumstance to vigorously refute any claims that the status quo is appropriate. Simply put, this Motion is not the proper vehicle for such a detailed argument; a motion for an *Open America* stay, in which FBI provides evidence justifying its entitlement to such a stay, is.